UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KEVIN HAMILTON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LAS VEGAS METRO POLICE DEPARTMENT, ALLIED UNIVERSAL, AMERICAN MEDICAL RESPONSE, BRETT HANSEN, AARON LOVINGER, ANGELICA LATITECI, SARAH ABIOG, and SUNRISE HOSPITAL AND MEDICAL CENTER,<br><br>　　　　Defendants. | Case No. 2:21-cv-01746-JAD-EJY<br><br>**ORDER**<br><br>**and**<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Plaintiff's Complaint and application to proceed *in forma pauperis* ("IFP"). ECF Nos. 1 and 1-1. Plaintiff is not incarcerated and has provided the necessary information to qualify for IFP status, which will be granted. Therefore, the Court proceeds with reviewing the Complaint.

**I.     Screening the Complaint**

In screening a complaint, a court must identify cognizable claims and dismiss all claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915(e)(2) when reviewing the adequacy of this Complaint. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Federal Rule of Civil Procedure 8(a), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." To survive § 1915(e)(2) review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All allegations of material fact are taken as true and

construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Nonetheless, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court liberally construes pro se complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Finally, all or part of a complaint filed by a person proceeding under § 1915 may be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     The Defendants

Plaintiff names thirteen defendants in his Complaint including five Doe Defendants. The five Doe Defendants include two Las Vegas Metropolitan Police Department ("LVMPD" or "Metro") Officers identified as Does I and II, two Allied Universal security guards identified as Does III and IV, and one EMT apparently employed by American Medical Response ("AMR") identified as Doe VII. ECF No. 1-1 at 2-4. Does I through IV and VII are sued in their individual and official capacities. Defendant V is identified as LVMPD and is sued in its official capacity. Defendant VI is identified as Allied Universal ("Allied") and is sued in its official capacity. Defendant VIII is identified as AMR and is sued in its official capacity. Does IX through XII are Dr. Brett Hansen (Hansen"), Dr. Aaron Lovinger ("Lovinger"), Nurse Angelica Latifeci ("Latifeci"), and Nurse Sarah Abiog ("Abiog"), all sued in their individual and official capacities. Defendant XIII is Sunrise Hospital and Medical Center ("Sunrise"), which is sued in its official capacity.

## III.    Plaintiff's Allegations

The facts summarized below come solely from Plaintiff's Complaint and, consistent with legal limits, are accepted as true for purposes of this Report and Recommendation. That said, claims

against defendants who are immune from suit or claims of infringement of a legal interest that clearly do not exist, or that are frivolous or delusional scenarios, will be recommended for dismissal.

Plaintiff claims that on November 26, 2020, he was approached and detained by Doe LVMPD Officers I and II either a few feet from his front door or the door of an apartment building in which residents were complaining. ECF No. 1-1 at 3, 7. Doe Officer II called an ambulance that arrived about 10 minutes later after which Plaintiff was allegedly forced by an AMR employee into the ambulance operated by AMR's EMT. *Id*. at 3-4. Plaintiff says he has epilepsy and a cyst on his brain, as well as breathing problems all of which he reported to the Doe Officers, but which reports were ignored. Plaintiff says Doe Officers I and II attempted to strap him to a gurney "as if … [he] was crazy." *Id*. at 4. Plaintiff says that the EMT (identified as Doe VII in Plaintiff's list of defendants (ECF No. 1-1 at 4), but mistakenly referred to as Doe V throughout the Complaint) obtained his social security number illegally from Doe Officer II who got the information from Plaintiff's wallet without Plaintiff's permission. *Id*. Plaintiff says he forbid Doe V from doing anything medical to him because it could kill him, but he was nonetheless poked in the finger with a needle. *Id*.

Once Plaintiff arrived at Sunrise, he told Nurses Latifeci and Abiog that his information was already in their computer, and that he had epilepsy and needed medication. *Id*. at 5. Plaintiff states he demanded to know why he was at Sunrise, and that Latifeci refused to show him what he knows was a "Legal Hold Form" completed for someone other than him. *Id*. at 5. According to Plaintiff, Latifeci and Abiog attempted to prescribe various psychotropic drugs, which Plaintiff refused, and Benadryl to which Plaintiff claims an allergy. *Id*. Plaintiff says he was held by the wrist by Does III and IV (employees of Allied) and that he threatened charges against the nurses and the Allied employees "because they knew that … [Plaintiff] was allergic to Benadryl …" *Id.*

Plaintiff says he was sitting quietly after these events when Abiog walked up to him and "shot him in the arm with a needle" telling Plaintiff the doctor told her to give him the shot. *Id*. at 6. Plaintiff alleges that once this medicine took effect, Abiog continued to give him medicine prescribed by Drs. Hansen and Lovinger. *Id*. He was given the medicine against his will. *Id*.

Plaintiff says he asked Latifeci to call his "daughter's mother," who supposedly works for Sunrise, because he needed epilepsy medicine. Plaintiff says Latifeci did not believe him, but ultimately contacted the in-hospital pharmacy and learned Plaintiff's daughter's mother works at Sunrise, but "had just clocked out." *Id*. Plaintiff alleges that Latifeci somehow still called Plaintiff's daughter's mother, and this is why and how Plaintiff says he ultimately got his epilepsy medicine. *Id*. at 7.

Plaintiff says he was able to obtain his medical records from Sunrise, which falsely reported Plaintiff stated his sister owned the hospital and his brother was head of security. *Id*. Nurses Abiog and Latifeci also allegedly falsely reported the following:

> Patient seen by another E.R. physician and placed on a L2K hold for homicidal ideations. Patient was knocking on doors in apartment complex and threatening to kill residents. When Metro Police Department arrived, patient threatened to kill police officers. Patient was placed on legal hold and brought to the emergency department. Although patient now denies these allegations the complaint is more credible than the denial[. P]atient will be placed on legal hold for psychiatric evaluation. Legal hold form completed by me.

*Id*. Plaintiff's facts include denials of any threats to kill police officers or residents and that he was going door to door. *Id*. Plaintiff says he was never cited for any crime and never received his Legal Hold Form. *Id*. Plaintiff says Sunrise told him there is no legal hold form to provide him and that he left Sunrise approximately eight hours after he arrived, which was not long after he received "psych medication." *Id*.

Plaintiff alleges the following causes of action: (1) False Imprisonment and Infliction of Emotional Distress; (2) Respondeat Superior; (3) Negligent Hiring; and, (4) Negligent Supervision and Training. Plaintiff seeks the following damages: (1) from Abiog, Latifeci, Hansen, Lovinger, and Sunrise, individually and jointly, in excess of $3,900,000; (2) from Doe Officers I and II, and LVMPD, individually and jointly, in excess of $2,000,000 for general and compensatory damages; (3) from Allied Security Guards Doe III and IV as well as from Allied itself, jointly and severally, in excess of $1,000,000 for general and compensatory damages; and (4) from AMR and Doe V (the EMT), jointly and severally, $300,000 for general and compensatory damages. Plaintiff also seeks punitive damages, special damages, and an award of attorney's fees and costs.

IV. **Analysis of Plaintiff's Complaint**

A. <u>Plaintiff Fails to State Claims Against Defendant Entities Under Respondeat Superior</u>.

Plaintiff's Second Cause of Action is titled "Respondeat Superior." *Id*. at 10. The doctrine of Respondent Superior provides that employers are vicariously liable for the actions of their employees within the scope of employment. However, Respondent Superior is a theory of liability, not a cause of action. *Mischke v. Goal Trucking, LDS*, Case No. 2:14-cv-1099 JCM (VCF), 2014 WL 5307950, at **2-3 (D. Nev. Oct. 16, 2014); *Fernandez v. Penske Truck Leasing Co., L.P.*, Case No. 2:12-cv-295 JCM (GWF), 2012 WL 1832571, at *1 n.1 (D. Nev. May 18, 2012). For this reason, Plaintiff's Second Cause of Action should be dismissed with prejudice.

B. <u>Plaintiff Only Seeks Money Damages Thus Precluding All § 1983 Claims Asserted Against LVMPD and Doe Officers I and II in Their Official Capacities</u>.

Plaintiff's § 1983 claims for false imprisonment against the LVMPD and Does I and II in their official capacities fail because Plaintiff seeks monetary damages only. ECF No. 1-1 at 19. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Instead, "a suit against a state official in his or her official capacity ... is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* (internal citations omitted). In sum, Eleventh Amendment to the U.S. Constitution insulates states and their officials from suits for money damages when acting in their official capacities. *Will*, 491 U.S. at 70-71; *Howard v. Cox*, Case No. 2:17-cv-01002-JAD-BNW, 2020 WL 3621341, at *3 (D. Nev. July 2, 2020). For this reason, all claims asserted against the LVMPD and Doe I and Doe II in their official capacities seeking money damages must be dismissed with prejudice.

C. <u>Plaintiff's False Imprisonment-Fourth Amendment Claim Against LVMPD Also Fails Because Plaintiff Does Not Assert Facts Supporting a Cause of Action Under *Monell*</u>.

Liberally construing Plaintiff's First Cause of Action, labeled a false imprisonment claim, as one seeking to assert liability under the Fourth Amendment for an unlawful seizure, Plaintiff's claim

5

fails.[1] Under the U.S. Supreme Court decision in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Court explained municipalities and local governmental entities can be sued directly under § 1983 for violations of constitutional rights. *Id.* at 690. However, a plaintiff must allege one of three theories of liability to recover from a municipality or local governmental entity under § 1983. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)). "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.* "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). Here, Plaintiff does not allege any facts suggesting that an official policy or custom of the LVMPD resulted in a constitutional injury or that the conduct of Doe Officers I and II amounted to the LVMPD's official policy. Plaintiff also does not allege that the acts as described were committed by an official with final policy making authority. For these reasons, Plaintiff's First Cause of Action for false imprisonment fails to state a claim against the LVMPD.

        D.    <u>Plaintiff's False Imprisonment-Fourth Amendment Claim Against Doe Officers I and II in Their Individual Capacities Also Fails.</u>

Plaintiff's false imprisonment allegations, as currently pleaded, fail to state a constitutional violation against Doe Officers I and II in their individual capacities. That is, even construing this claim as one for unreasonable seizure in violation of the Fourth Amendment, Nevada law permits the emergency detention of an individual under the factual circumstances alleged in Plaintiff's Complaint. Specifically, NRS 433A.0195 defines a person "deemed to present substantial likelihood of serious harm to himself or others" as someone who, "without care of treatment … is at serious

---

[1] The Fourth Amendment prohibits unreachable search and seizure. A common law false imprisonment claim may be properly analyzed under the Fourth Amendment. *Brigance v. Nevada*, Case No. 2:17-cv-00250-JCM-GWF, 2018 WL 2697393, at *5 (D. Nev. June 5, 2018) (internal citation omitted).

risk of … attempting suicide or homicide … [or] causing bodily injury to himself … or others ….” NRS 433A.150, allows the detention for evaluation, observation, and treatment of "a person alleged to be a person in a mental health crisis … in a public or private mental health facility or hospital under an emergency admission." NRS 433A.160 allows a person to be taken into custody and transported, without a warrant, by a local law enforcement agency, such as Metro, "to a public or private mental health facility or hospital" if the "person [is] in a mental health crisis." When these statutes are considered in light of Plaintiff's allegations, Plaintiff fails to state a violation of his Fourth Amendment rights.

Plaintiff alleges that the actions of Doe Officers I and II were taken in the context of needing to determine Plaintiff's personal safety or the safety of the public in accordance with Nevada Revised Statutes. ECF No. 1-1 at 3-7. Plaintiff admits that the Officers arrived on the scene where he was detained, called for an ambulance, and placed him in an ambulance for transport to Sunrise for evaluation and observation based on what was perceived and reported to be threats to kill members of the public and law enforcement. *Id.* at 7. That is, Plaintiff admits it was reported that he was knocking on doors threatening to kill residents of an apartment complex and that he also threatened to kill Metro officers when they arrived on the scene. *Id.* These reports are apparently included in documents Plaintiff received and, thus, are alleged to be part of records kept by Sunrise. *Id.* Moreover, even if the reports of Plaintiff's threats are ultimately wrong as Plaintiff claims, the reports known to Doe Officers I and II at the time Plaintiff was placed in an ambulance and transported to Sunrise support the conclusion that these officers did not need a warrant, but had a reasonable and objective basis to believe there was probable cause that Plaintiff posed a threat to his own safety as well as to the safety of others. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1140 (9th Cir. 2019); *Larry v. Helzer*, Case No. 05-cv-229-BR, 2006 WL 1455615, at **6-7 (D. Org. May 17, 2006) (finding compelling the Tenth Circuit's reasoning that "[t]o determine the scope of probable cause required, the court considered the rationale underlying state authority to seize a person in the civil context") (internal citation omitted). Thus, the Court finds that Plaintiff's current allegations, even when considered in a light most favorable to Plaintiff, are insufficient to state a

7

Fourth Amendment violation against LVMPD Doe Officer I and II as the allegation do not state a claim for relief that is plausible on its face.

> E. <u>Plaintiff Fails to Plead Facts Demonstrating That Defendant Abiog, Latifeci, Hansen, Lovinger, Allied, AMR, or Sunrise Acted Under Color of State Law causing Constitutional or Federal Law Violations Thus Precluding Plaintiff's § 1983 Claims Against These Defendants from Proceeding</u>.

To plead a Section 1983 claim, a plaintiff must allege that the defendant, while acting under color of state law, deprived the plaintiff of rights secured by the U.S. Constitution or federal statutes. 42 U.S.C. § 1983; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1313-14 (9th Cir. 1989). A plaintiff may attribute a private actor's conduct to the State under one of three theories: the "state compulsion" test, also known as the "government nexus" test; the "joint action" test; or the "public functions" test. *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812, 816 (9th Cir. 2010); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (state compulsion); *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982) (public functions). Further, government contractors "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker*, 457 U.S. at 841.

Plaintiff fails to plead facts sufficient to establish Section 1983 liability against the private defendants under any of these theories. Beginning with AMR, Plaintiff alleges no facts other than this entity operated an ambulance that transported Plaintiff to Sunrise. These facts do not state a constitutional violation let alone one that ties AMR to state or local government through any test recognized by the Court. With respect to Allied as an entity, rather than its employees, Plaintiff asserts no allegations at all and, thus, cannot tie this defendant to the State of Nevada or a violation of Plaintiff's constitutional or federally protected rights. With respect to Sunrise, as opposed to its employees, Plaintiff asserts nothing that reflects the hospital acted in a manner that can be attributed to the State.

Regarding Defendants Abiog, Latifeci, Hansen, and Lovinger, all health care providers at Sunrise, Plaintiff collectively asserts they failed to provide him information when requested; showed him a legal hold form that referenced a name other than his; administered medication prescribed by Hansen and Lovinger; and, allegedly refused to call his daughter's mother who worked for Sunrise,

knew Plaintiff's need for epilepsy medication, and that could assist Plaintiff with his care. These actions, as described by Plaintiff, are not ones traditionally performed by the State. The allegations do not demonstrate that these health care providers acted jointly with the State. The conduct does not demonstrate a sufficient nexus between the conduct of these defendants and government regulation to state a claim. There are also no allegations supporting the conclusion that these individuals were pervasively entwined with a public institution.

In the absence of sufficient factual allegations that create a facially plausible claim of private individuals or entities engaged in actions under color of state law that deprived Plaintiff of rights secured by the U.S. Constitution or federal statutes, Plaintiff fails to state a cognizable claim under § 1983.

F. **Plaintiff's Third and Fourth Causes of Action for Negligent Hire, Supervision, and Training Claims Against the LVMPD Fail as a Matter of Law**.

Plaintiff's Third and Fourth Causes of Action against LVMPD asserting negligent hiring, supervision, and training fail as a matter of law. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" employees regarding "their legal duty to avoid violating citizens' rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion)). Further, the District of Nevada, "relying on guidance from the Ninth Circuit, has specifically held that Nevada's discretionary-function immunity statute, NRS § 41.032(2), bars claims for negligent hiring, training, and supervision" against the LVMPD. *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F.Supp.3d 999, 1013 (D. Nev. 2014) rev'd on other ground 670 Fed. Appx. 617 (9th Cir. 2016); *Beckwith v. Pool*, Case No. 2:13-cv-125-JCM-NJK, 2013 WL 3049070, at **5-6 (D. Nev. June 17, 2013); *Cherry v. CCSD et al.*, Case No. 2:11-cv-1783-JCM-GWF (D. Nev. Apr. 22, 2014); *NealLomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary-function immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim.").

Based on the foregoing, the Court recommends that Plaintiff's Third and Fourth Causes of Action alleging negligent hiring, supervision, and training against the LVMPD be dismissed with prejudice because this entity enjoys discretionary-function immunity.

G. <u>Plaintiff's Third and Fourth Causes of Action for Negligent Hire, Training, and Supervision Against Allied, AMR, and Sunrise Fail to State Claims</u>.

To state a claim for negligent hiring, training, and supervision in Nevada, Plaintiff must allege "(1) a general duty on the employer to use reasonable care in the [hiring,] training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Reece v. Republic Services, Inc.*, Case No. 2:10-cv-00114-GMN-RJJ, 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011). Plaintiff's allegations with respect to negligent hiring against Allied and AMR consist solely of legal conclusions. ECF No. 1-1 ¶¶ 52, 54-58. With respect to Sunrise, Plaintiff asserts these same legal conclusions coupled with the statement that the hospital knew of or should have known that its employees were "not fit for employment as medical professionals." *Id*. at 60. Plaintiff's conclusory allegations, without any additional facts to support these allegations, are insufficient to state a negligence claim that is plausible on its face.

With respect to Plaintiff's negligent training and supervision claim against Sunrise, he states that this defendant "neglected, failed or refused to properly supervise, train and discipline" its employees "despite knowledge" that Sunrise had "knowledge of their propensity to act in a manner that would violate citizens [sic] rights …." *Id*. ¶ 65. Of course, the Court presumes Plaintiff refers to the administration of health care against Plaintiff's wishes when he suggests there were actions taken by Sunrise employees that violated his state law rights. However, Plaintiff provides no facts (as opposed to conclusions) supporting the contention that Sunrise knew or should have known that such alleged acts would occur. As to Allied and AMR, Plaintiff's allegations suffer from the same lack of factual support. *Id*. ¶¶ 73, 77. Plaintiff's allegations offer labels and conclusions that are insufficient to sufficiently plead these state law claims. *Twombly*, 550 U.S. at 555. For this reason, the Court recommends Plaintiff's claims of negligent hire, supervision, and training against Allied, AMR, and Sunrise be dismissed without prejudice.

  H. <u>Plaintiff's Intentional Infliction of Emotional Distress Claim Against Does I, II, III, and IV, the EMT (Doe VII Referred to as Doe V), Abiog, Latifeci, Hansen, Lovinger, AMR, Allied, Sunrise, and the LVMPD</u>.

In Nevada, the elements of a cause of action for infliction of emotional distress are: "'(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (quoting *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)).  Regarding AMR, Allied, Sunrise, and LVMPD, these claims fail because Plaintiff alleges no conduct that would allow such claims to proceed. AMR, as an entity, is alleged to have provided an ambulance that transported Plaintiff to Sunrise. With respect to Allied, it is unclear, based on Plaintiff's allegations, what role that company played in the events described.  In fact, Plaintiff's only factual allegations against LVMPD, Allied, AMR, and Sunrise as entities are conclusory assertions that each negligently hired, supervised, and trained its employees.  These allegations are insufficient to state a claim of extreme and outrageous conduct. *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998) (extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community") (internal quotation marks and citation omitted); *Tseu ex rel. Hobbs v. Jeyte*, 962 P.2d 344, 351 (Haw. 1998) (stating that infliction of emotional distress exists under circumstances where a reasonable man or woman, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case and requires some form of physical injury to recover damages) (quotation omitted).

LVMPD Officers Doe I and II are alleged to have seized Plaintiff in a manner that violated his Fourth Amendment Rights.  Doe I and II are also alleged to have refused to provide Plaintiff their names and badge numbers.  Doe II is alleged to have called an ambulance and obtained Plaintiff's Social Security Number from his wallet without his permission.  Both Officers are alleged to have tried to strap Plaintiff to a gurney.  There are no allegations regarding the Officers' conduct once Plaintiff was being transported to and arrived at Sunrise.  As stated above, the Court finds Plaintiff's allegations do not plead a Fourth Amendment violation when viewed from an objective and reasonable basis as the Officers had information that Plaintiff posed a serious threat to his own

safety as well as to the safety of others. The Officers are alleged to have acted in a manner that is consistent with Nevada law regarding individuals in a mental health crisis. The alleged failure to provide names and badge numbers, calling an ambulance, and obtaining Plaintiff's Social Security Number also do not rise to the level of extreme and outrageous conduct. In sum, the Court finds Plaintiff's current allegations do not establish extreme and outrageous conduct by Doe Officers I and II that was intended to or with reckless disregard would cause Plaintiff severe emotional distress.

Does III and IV are alleged to be security guards that worked for Allied. It appears from a review of Plaintiff's Complaint that they were present at Sunrise after his arrival at the hospital. First, Plaintiff alleges that these individuals held his wrists while nurses at Sunrise tried to give Plaintiff a shot of Benadryl. ECF No. 1-1 at 5. Second, Plaintiff alleges that these security guards somehow knew he was allergic to Benadryl. *Id*. The Court finds the second allegation to be so fantastic that it is not worthy of credence. *Neitzke*, 490 U.S. at 327-28; *McKeever*, 932 F.2d at 798. However, with respect to the first allegation, if Plaintiff was physically restrained against his will by security guards when there is no allegation that, at this juncture, Plaintiff was acting in a manner that could be considered dangerous to himself or others, this could be sufficient to state a claim of extreme and outrageous conduct. But, Plaintiff does not allege he suffered severe or extreme emotional distress as a result of this conduct. *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D.Nev.1993) ("[s]evere or extreme emotional distress" is distress "so severe and of such intensity that no reasonable person could be expected to endure it."). Instead, all Plaintiff states as to Does III and IV is that as a result of their alleged negligence he "has been caused, and will in the future be caused, to sustain loss of income and/or impairment of earning capacity …." ECF No. 1-1 at 24. Thus, Plaintiff's claims against Doe Defendants III and IV fail to plead the essential element of severe emotional distress, which is necessary to state an intentional infliction of emotional distress claim.

With respect to individual defendants Abiog, Latifeci, Hansen, Lovinger, and the AMR EMT who is mistakenly referred to as Doe V (instead of Doe VII), Plaintiff alleges the following:

- the EMT "assaulted" Plaintiff by forcing him into an ambulance, getting Plaintiff's Social Security Number from Doe Officer II, strapping Plaintiff

to a gurney, and poking Plaintiff's finger with a needle without permission. ECF No. 1-1 at 4;

- Hansen and Lovinger prescribed medication. *Id*. at 5-6; and,

- Abiog and Latifeci refused to tell Plaintiff why he was at Sunrise, showed Plaintiff a legal hold document with another patient's name, administered prescribed medication against Plaintiff's will, failed to give Plaintiff epilepsy medication, refused to call Plaintiff's daughter's mother, and falsely reported that Plaintiff was knocking on doors threatening to kill people, and threatened to kill police officers when they arrived to detain Plaintiff. *Id*. at 5-7.

The allegations of prescribing medications made against Drs. Hansen and Lovinger are insufficient to establish extreme and outrageous conduct. NRS 433A.150. For the same reason, the administration of medications by Abiog and Latifeci fails to allege sufficient facts to establish extreme and outrageous conduct. While it is potentially true that a refusal to provide epilepsy medication could be extreme and outrageous, this would most likely be true if such medication was known to be appropriate and needed at the time of refusal. Here, however, Plaintiff alleges that once his need for epilepsy medication was confirmed, it was prescribed. ECF No. 1-1 at 7. There is no allegation that Plaintiff suffered a seizure.

As for the allegations that Abiog and Latifeci refused to tell Plaintiff why he was at Sunrise and refused to call his daughter's mother, whether considered alone or together with other allegations, these assertions fail to rise to the level of extreme or outrageous conduct under the circumstances. Even assuming Abiog and Latifeci refused to answer Plaintiff's initial question, it is clear from his Complaint that he knew why he was being transported to Sunrise even if he disagreed with the reason. And, if these nurses did not stop to call Plaintiff's daughter's mother when requested by Plaintiff, this is not extreme or outrageous especially given that Plaintiff admits epilepsy medication was administered. With respect to the EMT, Plaintiff was transported by ambulance to Sunrise because he was reasonably and objectively perceived to be having a mental health crisis requiring observation and treatment as allowed under Nevada law. Finally, the Court finds the notion that any of the defendants would have made up a detailed and knowingly false report regarding Plaintiff's conduct resulting in his transport and treatment at Sunrise not worthy of credence.

For the reasons stated above, the Court recommends Plaintiff's intentional infliction of emotional distress claim asserted against the Defendants be dismissed without prejudice.

**V.     Order**

IT IS HEREBY ORDERED that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) be granted.

**VI.    Recommendation**

IT IS HEREBY RECOMMENDED that Plaintiff's Second Cause of Action for Respondeat Superior be dismissed with prejudice.

IT IS FURTHER RECOMMENDED that Plaintiff's claims seeking money damages based on alleged wrongdoing of Defendants Doe I, Doe II, and the Las Vegas Metropolitan Police Department in their respective official capacities be dismissed with prejudice.

IT IS FURTHER RECOMMENDED that Plaintiff's Negligent Hire and Negligent Supervision and Training claims asserted against the Las Vegas Metropolitan Police Department be dismissed with prejudice.

IT IS FURTHER RECOMMENDED that the following claims asserted by Plaintiff be dismissed without prejudice to allow Plaintiff the opportunity to replead these claims curing the deficiencies identified above:

a.    Plaintiff's False Imprisonment-Fourth Amendment Claim Against LVMPD for failure to state a claim under *Monell*;

b.    Plaintiff's False Imprisonment-Fourth Amendment Claim seeking money damages against Does I and II in their individual capacities;

c.    Plaintiff's False Imprisonment-Fourth Amendment Claim against Abiog, Latifeci, Hansen, Lovinger, Allied, AMR, and Sunrise for failing to plead facts supporting that these private parties acted under Color of State Law and/or cause a violation of Plaintiff's Constitutional or federally protected rights;

d.    Plaintiff's Third and Fourth Causes of Action alleging Negligent Hire, Training, and Supervision against Allied, AMR, and Sunrise for failing to state a claim; and

e. Plaintiff's Intentional Infliction of Emotional Distress Claim against all Defendants for failure to state a claim.

IT IS FURTHER RECOMMENDED that Plaintiff be given **thirty (30) court days** from the date of this Report and Recommendation to file an amended complaint correcting the above deficiencies, with the following admonishment: Plaintiff is advised that if he files an amended complaint, the Complaint (ECF No. 1-1) no longer serves any function in this case. As such, the amended complaint must be complete in and of itself without reference to prior pleadings or other documents. The Court cannot refer to a prior pleading or other documents to make Plaintiff's amended complaint complete.

IT IS FURTHER RECOMMENDED that if Plaintiff fails to comply with this Order, Plaintiff's Complaint should be dismissed.

Dated this 23rd day of November, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).